IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| WILLIE J. HARRIS, JR., | ) | Case No. 09 C 50082 |
| | ) | |
| Plaintiff, | ) | |
| | ) | Hon. P. Michael Mahoney |
| v. | ) | U.S. Magistrate Judge |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

I.      **Introduction**

Willie J. Harris, Jr. ("Claimant") seeks judicial review of the Social Security

Administration Commissioner's decision to deny his claim for Disability Insurance

Benefits ("DIB"), under Title II of the Social Security Act, and Supplemental Security

Income ("SSI") benefits, under Title XVI of the Social Security Act. *See* 42 U.S.C. §

405(g). This matter is before the Magistrate Judge pursuant to the consent of both parties,

filed on June 19, 2009. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

II.      **Administrative Proceedings**

On May 10, 2007, Claimant applied for DIB and SSI, alleging a disability onset

date of June 15, 2002. (Tr. 78.) Claimant's initial application was denied on August 2,

2007. (Tr. 80-89.) His claim was denied a second time upon reconsideration on

September 14, 2007. (Tr. 91-98.) Claimant then filed a timely request for a hearing before

an Administrative Law Judge ("ALJ") on October 15, 2007. (Tr. 99.) The hearing took

place on June 2, 2008, via video teleconference between Evanston, Illinois and Rockford, Illinois, before ALJ Robert Karmgard. (Tr. 28.) Claimant appeared and testified in Rockford with his attorney present. (Tr. 28, 33-65.) Vocational expert ("VE"), Richard Willette, also testified before the ALJ. (Tr. 28, 65-75.)

On June 26, 2008, the ALJ held that Claimant was not disabled and denied his claims for DIB and SSI. (Tr. 13-21.) Afterwards, on August 19, 2008, Claimant filed a Request for Review with the Social Security Administration's Office of Hearing and Appeals. (Tr. 7.) The Appeals Council denied Claimant's Request for Review on February 5, 2009. (Tr 5-7.) As a result of this denial, the ALJ's decision is considered the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 404.981, 416.1455, 416.1481. Claimant now files a complaint in this Federal District Court, seeking judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3).

III.    <u>Background</u>

Claimant was born on April 6, 1967, and was forty-one years old at the time of the hearing. (Tr. 33, 130.) Claimant stood six feet and three inches tall, and weighed approximately 280 pounds when he appeared in front of the ALJ. (Tr. 34, 130, 162.) At the date of onset, Claimant weighed 320 to 340 pounds. (Tr. 34.) He attributes his weight-loss to a doctor-prescribed low-carbohydrate diet. (Tr. 35.) At the time of the hearing, Claimant resided in Rockford, Illinois with a friend of his sister. (Tr. 33.) He has earned a G.E.D.; he can read, write, and understand the English language; and reported no problems with basic mathematics. (Tr. 33-34.)

Claimant testified that he usually spends his days "laying in [a] recliner," sleeping, watching television, and doing "nothing." (Tr.41.) Claimant maintains that he is unable to help with any household chores or cleaning. (Tr. 41.) He seldom does any shopping or visits friends and family. (Tr. 42.) He alleges that he only regularly leaves the house to see his doctor or lawyer. (Tr. 44.) Claimant does not drive, and has not had a driver's license since 1996. (Tr. 35.) From 1992 to 2005, Claimant has been employed as a delivery driver, car detailer, warehouse worker, line cook, dietary aide, shoe repairer, child caregiver, and janitor. (Tr. 177.)

On August 30, 2000, while working for Midwest Temp Agency, Claimant was "struck in the leg by a fork lift [sic] truck." (Tr. 220.) Claimant suffered a "left leg contusion with [a] hairline fracture of the distal tibia." (Tr. 206, 231.) Claimant asserts that the pain associated with this injury was later compounded by an injury to his left knee, sustained in an automobile accident in 2004. (Tr. 35, 245.) It must be noted, however, that Claimant's first relevant injury appears to be a gunshot wound to the right knee in 1997. (Tr. 47.) Yet, no medical records were submitted concerning the gunshot wound, and Claimant only mentions the shooting injury twice within the record: once during his consultative evaluation (Tr. 251.), and again at the ALJ hearing. (Tr. 47.) Claimant asserts that he became disabled on or around June 15, 2002 and is unable to perform any substantial gainful activity due to the pain in his ankle and knees. (Tr. 76-79.) Claimant also testified that, between 2004 and 2007, he was unable to seek medical treatment because he did not have a medical card and could not otherwise afford the deductible. (Tr. 55.)

IV.  **Medical History**

**1. Left Ankle Fracture**

On August 30, 2000, Claimant was admitted to Edward Hospital in Naperville, Illinois, after he was struck in the leg by a forklift. (Tr. 200.) Dr. Patricia A. Higgins, D.O., noted that there were "[f]indings suspicious for hairline fracture of the distal fibula and possibly the medial malleolus of the tibia." (Tr. 222.) Upon follow-up, on September 1, 2000, Dr. Higgins diagnosed Claimant with "[L]eft leg contusion with hairline fracture of the distal tibia and possible medial malleolus." (Tr. 231.) Claimant was put on crutches and prescribed Anaprox[1] and Vicodin. (Tr. 231-232.) Initially, according to his "After Care Instructions," Claimant was to return to sedentary work for seven days, "or until seen by orthopedics." (Tr. 206.) Dr. Higgins then referred Claimant to Dr. Kenneth P. Sanders, M.D., at Naperville Orthopedics.

Dr. Sanders saw Claimant that same day, and found that Claimant "[had] nondisplaced fractures in his medial and lateral malleolar areas" and that Claimant's "ankle mortise [was] intact." (Tr. 229.) Claimant was placed in a "short-leg walking cast," and asked to return in two weeks for re-fitting. (Tr. 229.)

Claimant returned to see Dr. Sanders on September 15, 2000. (Tr. 233.) Dr. Sanders observed that the cast was "markedly loose" because Claimant's swelling had "diminished[,] but [was] still present." (Tr. 233.) Claimant was fitted with a new "short-leg nonwalking cast[,]" and asked to return "at which time the current . . . cast [was] to be removed[,] and x-rays taken of the ankle . . ." (Tr. 233.)

---

[1] Anaprox (aka: Naproxen) "is in a group of drugs called nonsteroidal anti-inflammatory drugs (NSAIDs). Naproxen works by reducing hormones that cause inflammation and pain in the body. It is used to treat pain or inflammation caused by conditions such as arthritis, ankylosing spondylitis, tendinitis, bursitis, gout, or menstrual cramps." Drugs.com. http://www.drugs.com/mtm/anaprox.html.

On October 6, 2000, Claimant returned as requested. (Tr. 234.) Dr. Sanders removed Claimant's cast, ordered that Claimant now use an "Aircast," and noted that the "x-rays demonstrate good early healing of both medial and lateral malleolar fractures." (Tr. 234.) The doctor continued, "[Claimant] is to return . . . on [October 30, 2000]" and "[w]e will have [Claimant] return to work on [October 31, 2000]." (Tr. 234.)

Upon Claimant's return, on October 31, 2000, Dr. Sanders reported that Claimant's "ankle is doing relatively well. His x-ray is looking good. Further progress to healing is noted." (Tr. 235.) However, "[t]here is some arthritic change noted at the talonvicular joint which is of a chronic nature." (Tr. 227.) He continued, "[Claimant] may return to his regular duty activity as of November 1, 2000. He is to return to [this] office in six weeks for a follow-up x-ray at would likely be his final visit." (Tr. 235.)

On December 12, 2000, Dr. Sanders reported, "[Claimant's] ankle is doing well. His x-ray shows complete healing. He is healed. His ankle mortise is intact. He is discharged. I would anticipate no element of permanency emanating from this injury." (Tr. 221.) No further medical records concerning Claimant's ankle fracture have been produced.

**2. Left Knee Contusion**

Claimant was involved in a automobile accident on August 5, 2004, when the vehicle he was riding in was "rear-ended." (Tr. 245.) Dr. Todd H. Chaffin, M.D., reported, "[Claimant] struck his left knee . . . on the [dashboard]. He complains of pain with walking. This is the only injury." (Tr. 245.) Claimant was given Vicodin for his pain, and his knee was placed in an immobilizer. (Tr. 246.) He was further advised to

keep his knee "extremely elevated" with an ice pack, and to take Advil for any pain. (Tr. 246.) Claimant was discharged home in "satisfactory condition," and no imaging studies were recommended due to the "apparent soft[-]tissue nature of the injury." (Tr. 246.) Claimant was invited to follow-up in eight-to-ten days if he still experienced pain, but there is no record of any follow-up pertaining to this injury. (Tr. 246.)

### 3. Social Security Administration Evaluation

After applying for SSI and DIB, Claimant underwent a twenty-minute consultative evaluation at the request of the Social Security Administration on July 11, 2007. (Tr. 250.) In his report, the evaluator, Dr. Kamlesh P. Ramchandani, M.D., noted:

> [Claimant] continues to have burning pain in the left ankle, occasionally cramping, precipitated on weight bearing, standing for [ten-to-fifteen] minutes, walking with the cane for [two and a half] blocks, without the cane for [one and a half] blocks, going up and down the stairs, cold and damp weather. He uses the cane for weight bearing and support. Lifting and carrying more than [five] pounds also tends to aggravate the pain.

(Tr. 250.)

According to Dr. Ramchandani's report, Claimant discussed his ankle injury in 2000, and a 1999 gunshot wound to his right knee[2]. (Tr. 251.) Claimant made no mention of his 2002 left knee contusion injury. (Tr. 250-252.)

Upon physical examination, Dr. Ramchandani observed Claimant limping on his left side, but that he was able to walk "gingerly" while leaning onto the walls. (Tr. 251.) Claimant was able to get on and off the examination table without support, and dress and

---

[2] It is unclear if Claimant is referring to the 1997 shooting, or if this is a separate incident. For the purposes of this opinion, the court will assume that Claimant was simply mistaken about the year of the shooting, and that the 1997 date, given during Claimant's testimony at the ALJ hearing, is correct. (Tr. 47.)

undress himself without assistance. (Tr. 251.) However, Claimant was unable to squat, "claiming that he has pain in his left ankle." (Tr. 251.) Dr. Ramchandani noted that there was no swelling or tenderness at the joints, but the "[r]ange of motion was painful at the left ankle joint." (Tr. 251.)

That same day, at the request of Dr. Ramchandani, Dr. Hyungmin Kang, M.D., examined Claimant's left ankle. (Tr. 256.) The examination revealed "no acute fracture or [misalignment]," and that "[t]he mortise [was] intact." (Tr. 256.) Dr. Kang also noted "[p]rominent spurring . . . arising from the dorsal aspect of the talus," and "degenerative changes with no osseous abnormality." (Tr. 256.)

Overall, Dr. Kang's ultimate impression was that Claimant had arthralgia of the left ankle joint and of the right knee joint. (Tr. 252.) No mention was made of Claimant's left knee by Dr. Ramchandani, Dr. Kang, or Claimant, at either Social Security evaluation.

### 4. Physical Residual Functional Capacity Assessment

On July 24, 2007, Dr. George Andrews, M.D., administered a physical residual functional capacity ("RFC") assessment at the request of the Social Security Administration. (Tr. 257.) According to Dr. Andrews' report, Claimant's "exertional limitations" allow him to perform light work: to frequently lift or carry ten pounds, occasionally lift or carry twenty pounds, stand or walk for a total of about six hours in an eight-hour workday (with normal breaks), and sit for about six hours in an eight-hour

workday (with normal breaks). (Tr. 258.) The exertional assessment also reports that Claimant's ability to push or pull is "unlimited" with consideration of Claimant's "lift and carry" limitations. (Tr. 258.)

Dr. Andrews also examined Claimant's "postural limitations." (Tr. 259.) According to his report, Claimant is not able to climb ladders, ropes, and scaffolds; but he is able to occasionally climb ramps and stairs; and can frequently balance, stoop, kneel, crouch, and crawl. (Tr. 259.)

### 5. Treatment at Crusader Clinic

After obtaining a medical card, Claimant sought treatment at Crusader Clinic on May 22, 2008. (Tr. 272.) Dr. Forrest Riordan, M.D., reported that Claimant had left-ankle arthritis and osteoarthritis in both knee joints. (Tr. 272.) Dr. Riordan noted that the "[left] ankle arthritis impairs his getting around" and that "[d]oing stand[-]up and frequent walking[-]type work causes early leg fatigue." (Tr. 272.)

### V.    Standard of Review

The court may affirm, modify or reverse the ALJ's decision outright, or remand the proceeding for rehearing or hearing of additional evidence. 42 U.S.C. § 405(g). The ALJ's legal conclusions are reviewed *de novo*. *Binion v. Charter*, 108 F.3d 780, 782 (7th Cir. 1997). However, the court "may not decide the facts anew, reweigh the evidence or substitute its own judgment for that of the [ALJ]." *Id.* The duties to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide the case are

entrusted to the Commissioner. *Schoenfeld v. Apfel,* 237 F.3d 788, 793 (7th Cir. 2001)

("Where conflicting evidence allows reasonable minds to differ as to whether a claimant

is entitled to benefits, the responsibility for that decision falls on the Commissioner.")

If the Commissioner's decision is supported by substantial evidence, it is

conclusive and this court must affirm. 42 U.S.C § 405(g); *see also Scott v. Barnhart,* 297

F.3d 589, 593 (7th Cir. 2002). "Substantial evidence" is "evidence which a reasonable

mind would accept as adequate to support a conclusion." *Binion,* 108 F.3d at 782. If the

ALJ identifies supporting evidence in the record and builds a "logical bridge" from that

evidence to the conclusion, the ALJ's findings are supported by substantial evidence.

*Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). However, if the ALJ's decision

"lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the

case must be remanded." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).


**VI.**     **Framework of Decision**

"Disabled" is defined as the inability "to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A physical or mental

impairment is one "that results from anatomical, physiological, or psychological

abnormalities which are demonstrable by medically acceptable clinical and laboratory

diagnostic techniques." 42 U.S.C § 423(d)(3).

The Commissioner proceeds through as many as five steps in determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The Commissioner sequentially determines the following: (1) whether the claimant is currently engaged in substantial gainful activity, (2) whether the claimant suffers from a severe impairment, (3) whether the impairment meets or is medically equivalent to an impairment in the Commissioner's Listing of Impairments, (4) whether the claimant is capable of performing work which the claimant performed in the past, and (5) whether any other work exists in significant numbers in the national economy which accommodates the claimant's residual functional capacity ("RFC") and vocational factors. *See* 20 C.F.R. § 404.1520.

VII.    <u>Analysis</u>

    1.      **This court will not consider evidence submitted after the ALJ's determination.**

Claimant's ALJ hearing was held on June 2, 2008. (Tr. 28.) The ALJ issued his decision on June 26, 2008. (Tr. 13.) After that decision, Claimant submitted supplemental medical records to the Social Security Appeals Council on December 10, 2008. (Tr. 273.) Claimant seeks to use these records as evidence in this judicial review.

Generally, the court "may not reverse an [ALJ]'s decision on the basis of evidence first submitted to the Appeals Council." *Eads v. Sec'y of Dept. of Health & Human Services*, 983 F.2d 815, 818 (7th Cir. 1993). However, under 42 U.S.C. § 405(g), the court may consider such evidence "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence

into the record in a prior proceeding." Much of these supplemental records appear illegible and irrelevant. (Tr. 275-286.) In fact, these records discuss the excision of a lesion on Claimant's "lower abdominal wall." (Tr. 283-284.) Claimant never maintains that he is disabled due to the lesion, and there is only a brief mention of Claimant receiving pain medication for his knee on October 7, 2008 - nearly four months after the ALJ's decision to deny benefits. (Tr. 281) Therefore, this court will not take the supplemental medical records into consideration.

> **2. Step One: Claimant is not currently engaged in substantial gainful activity.**

In the Step One analysis, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity. *See* 20 C.F.R. § 404.1520(b). Substantial gainful activity is work that involves doing significant and productive physical or mental duties and is done, or intended to be done, for pay or profit. *See* 20 C.F.R. § 404.1510. If the claimant is engaged in substantial gainful activity, he or she is found "not disabled" regardless of medical condition, age, education, or work experience, and the inquiry ends. If the claimant is not engaged in substantial gainful activity, the inquiry proceeds to Step Two.

Here, the ALJ determined that Claimant has not engaged in substantial gainful activity at any time relevant to his decision. (Tr. 18.) Neither party disputes this finding. As such, this court affirms the ALJ's Step One determination.

### 3. Step Two: Claimant Suffers From a Severe Impairment.

Step Two requires a determination whether the claimant is suffering from a severe impairment. A severe impairment is one which significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). The claimant's age, education, and work experience are not considered in making a Step Two severity determination. *See* 20 C.F.R. § 404.1520(c). If the claimant suffers a severe impairment, then the inquiry moves on to Step Three. If the Claimant does not suffer a severe impairment, then the claimant is found "not disabled," and the inquiry ends.

In the present case, the ALJ found that Claimant had the following severe impairments: "degenerative disease of the left ankle, with status post[-]fracture of the left ankle; degenerative disease of [both] knees; and obesity." (Tr. 18.) Neither party disputes this finding. As such, this court affirms the ALJ's Step Two determination.

### 4. Step Three: Claimant's impairment does not meet or medically equal an impairment in the commissioner's listing of impairments.

At Step Three, the claimant's impairment is compared to those listed in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "Listings"). The Listings describe, for each of the body's major systems, impairments which are considered severe enough *per se* to prevent a person from adequately performing any significant gainful activity. *See* 20 C.F.R. §§ 404.1525(a); 416.925(a). The Listings streamline the decision process by identifying certain disabled claimants without need to continue the inquiry. *See Bowen v. New York*, 476 U.S. 467 (1986).  Accordingly, if the claimant's impairment meets or is medically equivalent to a listed impairment, then the claimant is found to be disabled, and the inquiry ends. If not, the inquiry moves on to Step Four.

Here, Claimant asserts that the ALJ merely rendered conclusory statements with respect to his Step Three determination, and therefore, the determination cannot be considered to be based upon substantial evidence.

Claimant relies on *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786-787 (7th Cir. 2003), where that ALJ's "conclusory and conflated analysis" prevented the court from finding that substantial evidence supported the ALJ's conclusions and required remand. In *Brindisi*, the court reasoned that "failure to discuss or even cite a listing, *combined* with an otherwise perfunctory analysis, may require a remand." *Id.* at 787. (emphasis added).

The claimant in *Brindisi* specifically "applied for benefits under three listings: 102.08 (hearing impairments), 112.06 (anxiety disorders), and 112.11 (attention deficit hyperactive disorder)." *Id.* The ALJ in that case concluded that "the claimant [had] a combination of severe impairments which include: speech and language delays, recurrent otitis media, and ADD. However, none of these impairments [met] the requirements of an impairment listed in Appendix 1 to subpart P of regulation no. 4." *Id.* In short, the *Brindisi* ALJ failed to even identify which listings he considered. *See Id.*

Unlike the claimant in *Brindisi*, Claimant in this case never suggests, pre or post-hearing, that evidence exists to show that he would meet any specific listing. "[42 U.S.C.] § 423(d)(5)(A) expressly gives the [ALJ] the authority to place the burden of showing a medically determinable impairment on the claimant." *Bowen v. Yuckert*, 482 U.S. 137, 138 (1987).

Nevertheless, in the present case, the ALJ explicitly states that he "considered Listing Sections 1.02, 1.03, *et seq.*, but finds that none of these musculoskeletal sections are met or equaled, singly or in combination." (Tr. 19.) Though his review is brief, the ALJ directly cites to the listings that he considered. (Tr. 19.) Therefore, this court finds that the ALJ's determination that Claimant did not meet a listing was based on substantial evidence. As such, this court affirms the ALJ's Third Step analysis.

     **5.**     **Step Four: Based on Claimant's residual functional capacity, he is not capable of performing work which he has performed in the past.**

At Step Four, the Commissioner determines whether the claimant's RFC allows the claimant to return to past relevant work. RFC is a measure of the abilities which the claimant retains despite his or her impairment. *See* 20 C.F.R. § 404.1545(a), 416.945(a). The RFC assessment is based upon all of the relevant evidence, including: objective medical evidence; treatment; physicians' opinions and observations; and the claimant's own statements about his or her limitations. *See Id*. Although medical opinions bear strongly upon the determination of the RFC, they are not conclusive. The determination is left to the Commissioner, who must resolve any discrepancies in the evidence and base a decision upon the record as a whole. *See* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2); *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995).

"Past relevant work" is such work previously performed by the claimant that constituted substantial gainful activity and satisfied certain durational and recency requirements. *See* 20 C.F.R. §§ 404.1565(a), 416.965(a); Social Security Ruling 82-62. If

the claimant's RFC allows the claimant to return to past relevant work, the claimant will

be found "not disabled" and the inquiry ends. If the claimant is unable to return to past

relevant work, the inquiry proceeds to Step Five.

In the present case, before considering the Step Four analysis, the ALJ determined

Claimant had the following RFC:

> the [C]laimant can lift and carry up to ten pounds,
> occasionally, and can lift/carry lighter items . . .
> frequently[;] [he] can stand and walk, with normal breaks,
> for a combined total of two hours, during an eight-hour
> workday, but for no longer than [fifteen] minutes,
> continuously; [he] must be allowed to use a cane for
> ambulation; [he] can sit, with normal breaks, for up to six
> hours, during an eight-hour workday, but for no more than
> [twenty] minutes, continuously, and [he] must than [sic] be
> allowed to stand for one to two minutes; [he] may not
> climb ladders, ropes, or scaffolds, but may otherwise climb
> ramps, or stairs; and [he] can balance, stoop, kneel, crawl,
> and crouch, no more than occasionally.

(Tr. 19.)

In making this determination, the ALJ asserts that he "considered all symptoms and the

extent to which [they] can reasonably be accepted as consistent with the objective

medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and

416.929 and SSRs 96-4p and 96-7p." (Tr. 19.) He also claims to have "considered

opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927

and SSRs 96-2p, 96-5p and 96-6p." (Tr. 19.)

In his decision, the ALJ prefaced his discussion of the medical evidence with the

following statement: "[f]or the reasons discussed below, [C]laimant's reported degrees of

limitation are not overall consistent with the medical record." (Tr. 16.) The ALJ then summarizes the medical evidence provided by the Claimant. (Tr. 16.) The court specifically notes the following from the ALJ's discussion:

- Claimant was discharged on December 12, 2000, when imaging revealed "complete healing of the fractures and with left ankle mortise intact." (Tr. 16.)

- In August, 2004, "[o]n diagnosis of a left knee contusion, . . . [C]laimant was given a prescription for Vicodin tablets, and a knee immobilizer. No specific limitations upon activity were imposed." (Tr. 16.)

- At the 2007 consultative evaluation, "[t]he diagnosis was arthralgia of the left ankle and right knee joint." (Tr. 17.)

- "The agency reviewing physician opined that [C]laimant retained the capacity for light work . . . . This assessment was readopted on September 11, 2007." (Tr. 17.)

- In April of 2008, "Dr. Riordan opined that the [C]laimant's symptoms impaired [C]laimant's getting around. In addition[,] he stated that the [C]laimant's doing standup and frequent walking-type work would generate early leg fatigue." (Tr. 18.)

After considering the evidence of record, the ALJ found that "[C]laimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that the [C]laimant's statements concerning the intensity, duration[,] and limiting effects of these symptoms are not entirely credible." (Tr. 19.)  The evidence within the medical record is consistent with the ALJ's findings, and appears to conflict with Claimant's descriptions of his daily activities and limitations.

Claimant asserts that the ALJ's credibility determination contains no analysis or rationale, but is merely a recitation of the evidence of record, which does not meet the requirements of S.S.R. 96-7p and the regulations. The court finds that the ALJ adequately

linked his credibility determination to his discussion of the substantial medical evidence within the record. (Tr. 19.) Therefore, this court affirms the ALJ's credibility determination.

Claimant further argues that the ALJ failed to build a logical bridge between the evidence and the RFC. The medical record and the prior RFC determination of Dr. Andrews support the ALJ's RFC. (Tr. 19.) The medical records that support the RFC are cited at page 16, *supra*.

Dr. Andrews' RFC indicated that Claimant retained the ability to perform work at the light-exertional level. (Tr. 257-264.) The ALJ's RFC closely resembles Dr. Andrew's RFC, except that the ALJ was more generous in his analysis and limited Claimant to more sedentary-type work. (Tr. 19.)

Claimant also argues that the side-effects of Claimant's medications and Claimant's obesity were never taken into account by the ALJ. Yet, there is little evidence in the record to show that Claimant's bodyweight has been disabling, and no physician in the record limits Claimant's activities based on his weight or the side-effects of his medications. The ALJ's RFC limits Claimant's ability to climb ladders, ropes, scaffolds, ramps, and stairs; and balance, stoop, kneel, crawl, and crouch. (Tr. 19.) In essence, the ALJ has little else to take into account concerning Claimant's obesity or the side effects of his medication.

In consideration of the evidence listed above, this court finds that the ALJ's RFC determination is supported by substantial evidence in the record. The ALJ has built a logical bridge between the substantial evidence and his RFC determination.

After making his RFC determination, the ALJ found that Claimant "is unable to perform past relevant work." (Tr. 19.) Neither party disputes this conclusion. Therefore, this court affirms the ALJ's Step Four determination, and this analysis proceeds to Step Five.

### 6. Step Five: Claimant is capable of performing work existing in substantial numbers in the national economy.

At Step Five, the Commissioner must establish that the claimant's RFC allows the claimant to engage in work found in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(f), 404.1566. The Commissioner may carry this burden by relying upon the VE's testimony, or by showing that the claimant's RFC, age, education, and work experience coincide exactly with a rule in the Medical-Vocational Guidelines (the "Grids"). *See* 20 C.F.R. Ch. III, Part 404 Subpart P, Appendix 2; *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987); Social Security Law and Practice, Volume 3, § 43:1. If the Commissioner establishes that sufficient work exists in the national economy that the claimant is qualified and able to perform, then the claimant will be found "not disabled." If no such work exists, the claimant will be found to be disabled.

At the hearing, the ALJ relied on the testimony of a VE to determine if Claimant could perform any substantial gainful work that exists in significant numbers within the state of Illinois. (Tr. 19.) *See* 20 C.F.R. Pt. 404, subpt. P, App. 2, Table No. 2, Rule 201.21, 201.28. The VE testified that a person of Claimant's age, education, work experience, and RFC would be able to perform the requirements of such representative occupations as: a bench assembler (29,000 jobs in Illinois), a clerical addresser (2,520), and a production clerk (9,000). (Tr. 69.)

Claimant argues that the ALJ did not meet his Step Five burden because the VE's testimony did not constitute substantial evidence. Claimant asserts that the VE failed to consider the ALJ's RFC findings when he identified the proposed representative occupations. Specifically, Claimant takes issue with the "sitting and standing" requirements of the RFC, and believes that any employment that would allow him to "stand and walk . . . for a combined total of two hours, . . .but for no longer than [fifteen] minutes, continuously" (Tr. 19.); to "sit . . . for up to six hours, . . . but for no more than [twenty] minutes, continuously[;] and . . . [then] be allowed to stand for one to two minutes" (Tr. 19.) would merely constitute "sympathetic employment." *See Henderson v. Barnhart*, 349 F.3d 434, 434 (2003) (stating, "[t]he fact that a person holds down a job doesn't prove that he isn't disabled, because he may have a careless or indulgent employer or be working beyond his capacity out of desperation.") However, this court does not agree that the accommodations recommended in this RFC would amount to sympathetic employment.

In fact, the VE testified directly to this point. (Tr. 72.) When Claimant's attorney asked the VE if employers would tolerate or make "special accommodations" for the proposed RFC, the VE replied that if the employee could maintain the quality and quantity of work, the employer could make reasonable accommodations. (Tr. 72.)

Additionally, Claimant argues that the VE's testimony included reversible inconsistencies. Namely, he states that the VE incorrectly categorized Claimant's past employment as a shoe repairer's assistant and as a car detailer. The VE testified that these

past occupations are generally performed at the light exertional level. (Tr. 67.) Any such error is harmless as the ALJ had already found that Claimant was unable to perform his past work during the Step Four analysis.

Claimant also insists that this inconsistency should have raised a red flag, drawing the VE's credibility into doubt. According to S.S.R. 00-4p, "the adjudicator has an affirmative responsibility to ask about any possible conflict" between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). However, in this case, there was no reason for the ALJ to suspect any conflict. Claimant maintains that, during the hearing, his attorney called into question these inconsistencies. After reviewing the record, this court finds that no such action took place. The ALJ reasonably relied on the VE's testimony, as the VE's qualifications were never questioned, nor did any party suggest that there was an inconsistency at the hearing.

Finally, Claimant asserts that two of the three proposed occupations were beyond the scope of Claimant's RFC. Claimant argues that the production clerk position requires an SVP of 4, and that the bench assembly position is defined at the medium exertional level. A review of the VE's testimony does not warrant such a finding.

The record indicates that the VE considered specific occupations from within these broad categories with Claimant's RFC and skill-set well in mind. (Tr. 69.) Claimant incorrectly assumes that the VE limited the "bench assembly" position to the narrow category of "metal furniture assembler." There is simply no basis for this quite literal[3] interpretation, as there are many categories of bench assembly occupations which only require light-or-sedentary-type exertion. *See* Dep't of Labor, Dictionary of Occupational Titles at 706.684-022 (assembler, small products, alternate titles: bench assembler).

---

[3] Apparently, interpreting "bench assembler" as "one who assembles (metal) benches"

Furthermore, the VE explained that the work associated with the production clerk position would only require recording information or counting. (Tr. 69.) Similarly, he testified that the addresser position would merely require Claimant to address envelopes for mailing. (Tr. 69.) None of these three occupations appear to be beyond the scope of Claimant's RFC, and the ALJ appropriately relied upon the VE's testimony.

As such, this court finds that the ALJ properly determined that Claimant was capable of performing work existing in substantial numbers in the national economy. The ALJ appropriately relied on the testimony of the VE, and drew a logical bridge between that evidence and his decision. Therefore, this court affirms the ALJ's Step Five determination.

**VIII.** <u>**Conclusion**</u>

In light of the forgoing reasons, the Commissioner's Motion for Summary Judgment is granted, and Claimant's Motion for Summary Judgment is denied.

**ENTER:**

_____
**P. Michael Mahoney, Magistrate Judge**
**United States District Court**

**DATE:  December 10, 2010**